Good morning, Your Honors. I'm Karen Stolzberg. I'm appearing today on behalf of Patricia Pearson. Ms. Pearson has a claimant for Social Security benefits. If you've read the records, you'll see that she is an unfortunate woman who was subjected to very severe psychic, sexual, and physical abuse when she was a child, and she suffered from that for her entire life. The record in this case contains a great deal of evidence from a number of lay medical providers, nurse practitioners, physician's assistants, others, mental health providers. There are at least seven what are called non-acceptable treating source opinions in this record. There are statements from at least seven witnesses, seven lay witnesses, regarding Ms. Pearson's ability to function. In addition to that, there is an opinion from an examining psychologist, Dr. Bartels, and a treating psychiatrist, Dr. Herz. I'm most concerned about Dr. Herz's opinion and whether the ALJ appropriately discredited his testimony. And one of the questions that I had was the relationship between Dr. Herz and the other therapist at I think it was the Lutheran Community Clinic. Now, we have this case, Benton, which talks about a therapeutic team, and then the insights of the non-physician therapist can be attributed to or can be reported by the doctor, the medical professional. Can you explain to me a little bit more about the relationship between Herz and I guess it's Philip's son that Monica finds and there were other treaters there? I can explain to you only as much as I can construe from the record as you can. I did not represent this claimant at the hearing level, and so I wasn't talking to her and obtaining the evidence at that point. It does appear to me that Dr. Herz is a psychiatric provider at Lutheran Family Services, and Philip's son was one of the therapists. There was also another therapist there, Tanya Crawford, who's referred to, though I didn't see many notes that have her name on it. She's referred to with respect primarily to some of the evaluations that Dr. Herz did. But the way it looks, and if you read the brief, I set out her contacts at that clinic. She attempted to get in in 2004 due to delays. I'm sure this is a poverty clinic because Ms. Pearson was uninsured at the time. But there isn't any evidence that actually shows how he was working with those other therapists. Is that your understanding of the record? I think that it's easy to look at what Dr. Herz's personal contact with the claimant was. And the U.S. District Court and the ALJ misstated the personal contact that he had with her. There are four noted visits that he had with her in addition to the opinion letters that he sent. Now, the ALJ says that Dr. Herz, one of the bases for discrediting his remarks, was that he didn't go through or he didn't have access to a full record review. Now, there's language in one of his opinions that says, I looked at her history. But I was wondering whether there was evidence that, in fact, he did review her records or not, whether that statement was accurate, or whether there was evidence in the record one way or the other as to that statement by the ALJ. There is no evidence in the record. But I would assume, frankly, that he did not have access to a full record. He's working in a poverty clinic. He's dealing with probably a very large caseload of patients. It is not, I don't think that it is the usual practice in those clinics to obtain all medical records prior to treatment. But that's an assumption. I can make no other assumption based upon what's in the record. But I don't know that that really affects the validity of his opinion. Dr. Herz is a psychiatrist. He's an expert. He had personal contact with Ms. Pearson on four occasions, and he had oversight, we can assume, I think realistically assume, over the other therapists that she saw in that clinic. So there was a substantial period of treatment there. No. The ALJ also remarks that Dr. Herz didn't perform any testing. Is that required? Is it necessary? If you think about it, the way I look at those rationale is that she was stabbing around for rationale. Dr. Herz is a psychiatrist. Psychiatrists don't do testing. That's what psychologists do, neuropsychologists. They're trained to do psychometric testing. If that's required, there needs to be a referral to a trained psychologist for testing. That kind of rationale is analogous in some ways to the one used by the ALJ that was discredited in the Orn versus Astor case, where the ALJ in that case said that the claimant who was suffering from pulmonary problems had no evidence of radicular or neurological problems. That's true, because that wasn't what it was about. Dr. Herz can't be expected to do testing. It isn't in his bailiwick. If you'll look through the rationale used by the ALJ to decide that Dr. Herz's opinion was entitled to no weight, she used the two that you've mentioned. Unfortunately, in these ALJ decisions, the rationale are not set out really clearly and distinctly and separately. You have to kind of pull them out from the record. Pardon me, counsel. Maybe I'm misreading this, but you told me that Dr. Herz, being a psychiatrist, gives no tests. Does not do testing. Does not do psychometric testing. But on September 7, 2005, he prepared a mental functioning capacity report. Yes. Which is a report of tests of mental functioning. It's an opinion regarding his understanding of claimants' mental functioning. No, no. He gave her cognitive functioning tests, and he reported based on that. Did he not? No, I don't think so. I think that's incorrect. The residual functional capacity assessments that are done by psychiatrists and psychologists are based primarily upon their clinical interview with the client and what's called a mental status evaluation, which is a somewhat procedurally organized exam interview. But it's not testing in the sense of writing answers to a formal test. So he interviews her and evaluates her reaction to the questions that he puts her. If you look at all of the psychiatric examinations, what you'll see is that they're set out in sections, and they first do a mental status where they'll report on what they look like and how they're responding and what their affect is and whether their judgment appears good or fair or poor. And then they will take a history, and then they will talk about the symptomatology. And there's a sort of a procedure that's followed, and I think that that's reflected in Dr. Herz's reports too. Okay. Now, back to the rationale. The ALJ misstates the mental status findings that Dr. Herz had. He said that in examining her and talking to her, she became very upset and distracted, but she was fairly quickly calmed down. That is not a normal mental status. That's evidence to a trained professional of psychic distress. Let me ask you just one other question. I think the ALJ said that the mental report at the MRFCR supports a finding that the claimant's impairments meet both E and C listing criteria and that she is disabled. And then he goes off and discredits Dr. Herz's report for various reasons. So if we said, well, the reasons that the ALJ gave for discounting Herz were incorrect, what does that mean then? Where would we be, if you heard? Well, under ORIN and other longstanding case law, Dr. Herz, as a treating expert, is entitled to controlling weight. Unless there is substantial evidence contradicting his opinions. And ORIN is a very interesting case when you look at this. In ORIN, there was a contrast between the opinion of an examining doctor, such as Dr. Bartels, a doctor to whom the claimant was sent for an examination. You walk in, you sit down, they go through their procedure, and then they offer an opinion. And a treating physician. And in ORIN, the court said that the opinion of the treating doctor is entitled to controlling weight unless there is substantial evidence contradicting. And substantial evidence in that case was defined as either doing separate testing, some kind of testing that was different than what the treating doctor had, or making new and different diagnoses. And even if there was contradiction in the record to the treating physician opinion, the treating physician opinion was still entitled to deference. Okay. Why don't we hear from the other side? You're over time, but we'll give you a chance to respond. Yeah. Good morning, Your Honors. David Johnson, representing the Commissioner of Social Security. Dr. Herz's report that was before the ALJ stated that she, this is at Excerpt of Records, Volume 2, 105, stated that she had an intake history beginning in 925.04, and that's at the top paragraph. And Dr. Herz refers to that history. The later history, or later treatment by Dr. Herz that was before, not before the ALJ, but before the Appeals Council, especially at the Excerpts of Records, Volume 2 at page 116, the September 7th visit, Dr. Herz says that he has only seen her three times, so it was necessary to talk to her to get specific history. So I think Ms. Pearson's counsel is correct that Dr. Herz really had no history, and therefore I would submit no oversight over the treatment when he did the initial evaluation, which was before the ALJ. I'm confused now, because are you saying that the mental residual functioning report was not before the ALJ? No. That was a September 7th, 2005 report that went along with a psychiatric report by Herz, also dated September 7th, 2005, and that was preceded by a report by Dr. Herz dated July 6th, 2005. Correct. What was before the ALJ was the July 6th, 2005 report, and we know that because of the first page, which is Excerpts of Records, page 105 in Volume 2, lists the exhibit number that the ALJ refers to and how many pages are in the exhibit. Turning to the mental residual function capacity report, which is a form completed by Dr. Herz on September 7th, that's at page 111, it's exhibit 27F that was before the ALJ. Turning to page 115 of the Excerpts of Records, Volume 2, you notice the notation AC-4. That stands for Appeals Counsel Exhibit 4. That was not before the ALJ, even though it contains a September 7th, 2005 treatment note from Dr. Herz. Well, and the date of the visit for that one is the 7th of November, and the ALJ report is signed on February 24, 2006. I don't get it. So why is this not in front of the ALJ? I do not know why it wasn't either requested or of the doctor by Ms. Pearson or submitted to the ALJ. The administration develops the record and makes the efforts required by the regulations and did so in this case, and then as subsequent treatment happens, it's... But this is not subsequent treatment, and there's another date of visit, August 8, 2005, which may or may not be in the record, but again, long before the decision by the ALJ. The development of the record is done before the case is sent to an ALJ. Once the ALJ gets the record, if there's evidence of ambiguity or inadequacy, then the ALJ has a separate duty to perform record development, but the claimant also has a duty... Why then didn't the ALJ say, I want to get all the current stuff? What bothers me here is that the ALJ says there was only one visit to Dr. Herz, and he uses that, or rather she uses that, as a basis for discrediting the claimant. Not only was there not much attention or treatment, but also to say, well, what she would do is she'd go get a diagnosis that declared her disabled, and then she'd quit seeing these people. But that's not true with respect to Dr. Herz. And that evidence was there in the sense that it had happened before he reached his decision. And the affirmance in the district court is also based on, she saw Dr. Herz only once, but that's not true. That's my problem with putting Dr. Herz's evidence to one side so fast. Now, ALJ puts it to one side entirely. The district court says, you can't put it entirely to one side, but nonetheless treats it as only one and puts it to one side to some degree. But there's my problem with the case. I understand, and that's reasonable because we want, everyone wants, the administration wants and the claimant wants the cases decided on the law, as this court wants. The law requires, the regulations require, that development be made at certain times, and it puts a burden on both parties to develop the record. There was testimony during the hearing where the claimant said, I've seen him four times, and the claimant was represented by an attorney, and the claimant has a responsibility to provide evidence of her disability. But once the ALJ says, well, I can see only evidence of one, and you say there are four, does that then put any responsibility on ALJ, who has at least in the abstract an obligation, independent obligation to develop a record, to say, well, wait a minute, I've only got one. Can we clear this up? In this case, no, and here's why. The rejection of Dr. Herz and the rejection of claimant has independent bases beyond the discrepancy of one or four visits. Dr. Herz wrote down what the claimant told him and wrote down what he observed during the mental status examination. I take direct issue with counsel's assertion that psychiatrists do not perform psychological testing. IQ testing, MMPI, WAIS, TOM testing, test of memory malingering, can be administered by a psychologist or a psychiatrist. A psychiatrist has a medical doctorate that a psychologist doesn't. And what evidence is necessary? In other words, the ALJ says a few things about the claimant's subjective comments weren't supported by his examination observations. I wasn't sure what he was referring to there. And this is the crux to Judge Fletcher's question, I believe, in that what Dr. Herz observed was that there were occasional, I'm sorry, at times she would become anxious, then would clearly experience difficulty in concentration, but with reassurance was able to regain her concentration and proceed with the interview. That observation could be a work-related limitation. The ALJ accommodated that by limiting the claimant to jobs that don't require close interaction with the public, which could be distracting and disconcerting. No hazardous locations, so if she had a lapse in concentration, she wouldn't hurt herself. No complex tasks, so there's a lessened requirement of concentration. And no sudden, unexpected changes in the tasks, routine, or environment, so they wouldn't interrupt her concentration abilities. And is that what you, the ALJ also said, Herz's opinion was somewhat equivocal. He indicated uncertainty over cognitive functioning. Are you thinking he's referring to that same statement about she was nervous but stabilized with reassurance? Certainly that paragraph. He stated that she answers questions appropriately, without tangentiality. She's very articulate, and that she essentially had, well, she had insight and judgment that were normal, abstract thinking ability, and she essentially had normal behaviors on examination, but she related all sorts of difficulties, and he assigned a global assessment of functioning score, which is, in that case, his only assessment of limitation of 45 to 50, which is incongruent with a normal mental status exam. It must be based on her presentation. Well, I mean, you're saying his report's internally inconsistent? Is that what you're saying? If the claimant is believed in her entirety, yes, it's internally inconsistent. If the claimant is found to be opportunistically presenting her situation, then it makes sense that he would assess a low global assessment of functioning score, because that's based on symptomology, the DSM tells us. Well, one more question. The ALJ says Herz did not perform any testing and did not have access to a full record review. Now, he does say, I looked at her history, maybe that was in one of the reports that wasn't before the ALJ, I don't know, but was there any evidence that he didn't have to have access to a full record review? That's number one. And number two, is a psychiatrist required to perform any testing? In other words, is that a reason to discount a psychiatrist's report? It's better phrased as weighing rather than discounting. It's not that there was a flaw in Dr. Herz's analysis. It was that there were other practitioners and other observers who knew more. Dr. Dragovich knew more because she had the longitudinal history. She had Dr. Bartol's examination. She had the lay witnesses. She got to question the claimant and hear her testimony. How many of Dr. Herz's reports did she have in front of her? Dr. Dragovich? Yes. She had the one from July 6th and the mental residual functional capacity report, which is not based on testing. It's his opinions based on his knowledge of her case. In other words, she did not have all the reports that we now have in the record before her. Correct. In other words, she knew only part of what Dr. Herz had done, seen, and reported on. So it's hard to say that she knew more than anybody else when she hasn't even seen some of the reports that have been prepared by Dr. Herz. Well, it's not hard to say in this case because there's so much more than Dr. Herz's extra treatment notes that years of presentation and inconsistent with someone with her condition and Dr. Dragovich's clinical experience, someone with her issues would not present that way and then would not fail to follow through as she did multiple times. And Dr. Herz wasn't aware of all of those, even if he was aware of what happened in his clinic. Thank you for your time. I'm sorry. I've got one more question. And that is, it's very clear to me that there is simply no way on this record that we can remand for award of benefits. But it troubles me that the ALJ made his decision and the district judge affirmed based on an incomplete knowledge of what actually had happened at the time of the ALJ's decision. What harm is there in remanding for another look? Well, the harm is that every case, when it comes before the ALJ,  is the record fully developed? Are there any other records out there? What such a decision would say to all ALJs is you must resend to every medical practitioner that may have had anything to do with the claimant a question, have you seen the claimant, are there any updates, anything more? And, in fact, they must resend it before they issue their decision. And this changes the regulations, changes the regulatory burden of development of the record, and production of evidence of your disability. And it's impractical in that where would it stop? If the day before I issue the decision, I as an ALJ have to send out a letter and then wait for a response, maybe while I'm waiting for a response some other letter. That would be more persuasive to me if there were three visits by Dr. Hertz clustered in the week before the decision. But that's not what happened here. These were months before the decision. It's true in one after. Claimant always has the opportunity to file a new application as Austin Brock says they should. Okay. Thank you. Would you like a minute? I don't believe that it's necessary for you to look to whether or not this record needed to be fully developed at time of hearing in order to evaluate the evidence there. I disagree that the evidence is spotty or inconsistent. The ALJ has said that throughout the file, but I think if there's a global look at this evidence, it shows that this woman has had the same complaints for decades, that she's reported the same complaints to many people. None of this was opportunistically presented for purposes of Social Security. The many lay statements in this record may not be medical evidence, but certainly establish that her complaints have been consistent for many years. With respect to Orin, in Orin you were evaluating how to compare the report from an examining physician with a treating. I have to say, even though I think Orin is a wonderfully well-written, well-reasoned decision, we understand Orin. Orin is just in this case. Okay. Well, in this case you're dealing with an examining physician and a treating physician who both found that she had symptoms that were disabling. They both end up with a GAF of about the same, 45 to 50, and the other one with 50 and so on. Okay. How can the ALJ find that Dr. Bartol's report is largely supportable when he only saw her once and just did this basic exam, and Dr. Herz, who's a treating doctor, saw her many times? Okay. Thank you very much. Thank both sides for your argument. The case of Pearson v. Ashtray is now submitted for decision. The next case on the argument calendar this morning, Robinson v. Bottom.
judges: Fletcher W. , Bea, Ikuta